1         **IN THE UNITED STATES DISTRICT COURT**
        **FOR THE WESTERN DISTRICT OF TEXAS**
2               **AUSTIN DIVISION**

3 WHOLE WOMAN'S HEALTH ALLIANCE, FUND TEXAS  ) AU:18-CV-00500-LY
  CHOICE, LILITH FUND, INC., NORTH TEXAS EQUAL )
4 ACCESS FUND, THE AFIYA CENTER, WEST FUND,    )
  BHAVIK KUMAR, M.D., M.P.H.             )
5                            )
    Plaintiffs,                  )
6                            )
  V.                          ) AUSTIN, TEXAS
7                            )
  KEN PAXTON, CECILE YOUNG, JOHN W.       )
8 HELLERSTEDT, M.D., DAVID ESCAMILLA,      )
  STEPHEN BRINT CARLTON, JAMES B. MILLIKEN,  )
9                            )
    Defendants.                 ) JANUARY 7, 2019
10

11       **************************************************
     TRANSCRIPT OF ORAL ARGUMENT ON MOTION TO DISMISS

12          BEFORE THE HONORABLE LEE YEAKEL
     **************************************************

13

14 APPEARANCES:

15 FOR THE PLAINTIFFS:  STEPHANIE TOTI
                     JUANLUIS RODRIGUEZ
16                    LAWYERING PROJECT
                   25 BROADWAY, 9TH FLOOR
17                    NEW YORK, NEW YORK 10004

18                    RUPALI SHARMA
                   LAWYERING PROJECT
19                    99 SILVER STREET, APT. 4-10
                   PORTLAND, MAINE 04101
20

                   PATRICK J. O'CONNELL
21                    LAW OFFICES OF PATRICK J. O'CONNELL PLLC
                   2525 WALLINGWOOD DRIVE, BUILDING 14
22                    AUSTIN, TEXAS 78746

23 FOR THE DEFENDANTS:  ANDREW BOWMAN STEPHENS
                     BETH KLUSMANN
24                    OFFICE OF THE ATTORNEY GENERAL OF TEXAS
                   PO BOX 12548 CAPITAL STATION
25                    AUSTIN, TEXAS 78711

```
 1                           ADAM ARTHUR BIGGS
                             OFFICE OF THE ATTORNEY GENERAL
 2                           300 WEST 15TH STREET
                             AUSTIN, TEXAS 78701
 3
                             HEATHER GEBELIN HACKER
 4                           OFFICE OF THE ATTORNEY GENERAL OF TEXAS
                             209 WEST 14TH STREET, 7TH FLOOR
 5                           AUSTIN, TEXAS 78701

 6                           LESLIE W. DIPPEL
                             PATRICK POPE
 7                           TRAVIS COUNTY ATTORNEY'S OFFICE
                             P.O. BOX 1748
 8                           314 WEST 11TH STREET, ROOM 500
                             AUSTIN, TEXAS 78767
 9
     COURT REPORTER:         ARLINDA RODRIGUEZ, CSR
10                           501 WEST 5TH STREET, SUITE 4152
                             AUSTIN, TEXAS 78701
11                           (512) 391-8791

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by computerized stenography, transcript
     produced by computer.
```

|       |    |                                                             |
|-------|----|-------------------------------------------------------------|
| 13:31:55 | 1  | (Open court)                                             |
| 13:31:55 | 2  | THE COURT:  What we have scheduled for today are the    |
| 13:31:58 | 3  | defendants' motions to dismiss in Cause Number AU:18-CV-500, |
| 13:32:03 | 4  | *Whole Woman's Health Alliance*, and others *v. Paxton*, and |
| 13:32:10 | 5  | others.                                                 |
| 13:32:12 | 6  | Let me start with the plaintiffs, and announce who     |
| 13:32:14 | 7  | you are and who you represent, please.                  |
| 13:32:18 | 8  | MS. TOTI:  Stephanie Toti for the plaintiffs,          |
| 13:32:20 | 9  | Your Honor.                                             |
| 13:32:22 | 10 | MR. RODRIGUEZ:  Juanluis Rodriguez for the             |
| 13:32:24 | 11 | plaintiffs.                                             |
| 13:32:27 | 12 | MS. SHARMA:  Rupali Sharma for the plaintiffs.         |
| 13:32:29 | 13 | MR. O'CONNELL:  And Pat O'Connell for the plaintiffs,  |
| 13:32:41 | 14 | Your Honor.                                             |
| 13:32:41 | 15 | THE COURT:  And for the defendants?                    |
| 13:32:41 | 16 | MR. STEPHENS:  Your Honor, Andrew Stephens with the    |
| 13:32:41 | 17 | Office of the Attorney General for the State defendants and the |
| 13:32:41 | 18 | University of Texas Systems.  And I'm here with Adam Biggs, |
| 13:32:44 | 19 | also from the Attorney General's Office, Beth Klusmann, and |
| 13:32:47 | 20 | Heather Hacker from the Office of the Solicitor General. |
| 13:32:52 | 21 | THE COURT:  All right.  Before we do anything -- oh.   |
| 13:32:53 | 22 | We have others.                                         |
| 13:32:54 | 23 | MR. STEPHENS:  We also have the County defendants.     |
| 13:32:55 | 24 | THE COURT:  I see them now.  You were blocking them    |
| 13:32:57 | 25 | out.                                                    |

13:32:58 1       MS. DIPPEL:  I'm standing now.  I'm very short.

13:33:01 2       THE COURT:  All right.

13:33:01 3       MS. DIPPEL:  I'm Leslie Dippel.  I'm here on behalf

13:33:03 4  of County Attorney David Escamilla.  And with me is

13:33:07 5  Patrick Pope and Mr. Gabe Hodge.

13:33:07 6       THE COURT:  All right.  I want to ask you a couple of

13:33:12 7  questions about this case before we get started.  We have been

13:33:17 8  through it in my chambers fairly carefully, and it has gained a

13:33:25 9  lot of weight for something that all we've done is progress to

13:33:28 10 the motion to dismiss stage.

13:33:30 11      Motions to dismiss should be sparingly granted and

13:33:38 12 based pretty much on a legal premise as to whether or not there

13:33:43 13 is any way that a plaintiff can plead a case in such a way that

13:33:50 14 the law does not compel dismissal.

13:33:55 15      In reviewing the complaint and the response and the

13:34:01 16 motions to dismiss, it looks to me like this case is not

13:34:11 17 exactly what it appears to be in the complaint.  So I want to

13:34:14 18 address this initially to the plaintiffs:  It looks like for

13:34:25 19 sure in at least one motion you may be arguing something that

13:34:28 20 is somewhat different than what you pleaded in your complaint.

13:34:32 21 Both sides now have had an opportunity after the complaint was

13:34:39 22 filed, and in going through this briefing process leading up to

13:34:43 23 where we are today, to review everything in detail in this

13:34:48 24 case.

13:34:49 25      So let me ask whoever wants to speak first for the

13:34:52  1  plaintiffs:  Is this case still the same as it was when it was

13:34:57  2  filed, or has it morphed somewhat and are all of the arguments

13:35:03  3  still valid or are there new arguments you intend to make or

13:35:06  4  would like to make?

13:35:09  5       MS. TOTI:  Good afternoon, Your Honor.  Stephanie

13:35:14  6  Toti for the plaintiffs.  The case is still as we filed it.

13:35:20  7  There are no new claims, no new arguments in the case.  I think

13:35:25  8  there may have been some confusion about Plaintiffs' undue

13:35:30  9  burden claim, whether we were pleading some kind of novel undue

13:35:36  10 burden claim.  But we're not.

13:35:38  11      We've challenged five categories of laws; and for all

13:35:42  12 of the laws within each of those categories, we intend to

13:35:46  13 demonstrate that it's an undue burden and will simply ask the

13:35:48  14 Court to consider the full context in which the law operates.

13:35:52  15 But there is no -- we never intended to plead anything

13:35:56  16 different, and that hasn't changed.

13:36:04  17      THE COURT:  Well, I can tell you it appears somewhat

13:36:14  18 that you have taken a somewhat different tack in your response

13:36:19  19 to the motion to dismiss than you do in the complaint.  And so

13:36:27  20 here is my concern with this:  I really hate to deal with a

13:36:34  21 matter on motions to dismiss and either grant one or more

13:36:39  22 motions or overrule one or more motions and run the risk of the

13:36:46  23 case going to the appellate courts when it is not absolutely

13:36:51  24 clear what has been pleaded and argued, and I'm having a

13:36:55  25 problem with that.

To shift to the other side -- and I want to hear from Mr. Stephens in a minute -- I know I granted additional pages for this.  And, as you know, my policy is generally always to grant additional pages because I believe that both sides ought to be able to make their record in a district court as well as you can make it and, if you can go forth and reverse me, power to you.  But I think the State overplayed its hand a little bit.  I think one of my motions is 73 pages long or pretty close to it.  It's the State defendant's motion.  I can make an argument to you that, if it takes 73 pages to tell me why I should dismiss a case, maybe it probably shouldn't be dismissed.

The local rules which provide for 20 pages, I can tell you after having done this for a while, are adequate except in the rarest of circumstances.  The committee that drafts those rules is not a bunch of judges that sit around and try to figure out how to reduce their dockets.  The committees, by a substantial margin, the majority, is made up of practicing lawyers within the Western District of Texas, and then there's a sprinkling of one or two magistrates and one or two district judges on it.  So when we come up with this 20-page maximum, then that is not anything other than the lawyers' peers believing that it can get done in that.

I certainly, in going through this, have found that 73 pages probably confuses me.  And that is something that I

13:38:56  1  don't care for, because when I write an opinion in this case

13:39:01  2  and I rule on these motions to dismiss, I want the appellate

13:39:07  3  courts to know exactly why I ruled on the case the way I did

13:39:12  4  and that I don't get bogged down and write on some issue that

13:39:18  5  perhaps I didn't need to write on or is confusing to the

13:39:22  6  appellate courts.

13:39:23  7       So what I want to talk to you -- Mr. Stephens, let me

13:39:27  8  hear from you, and then I want to talk to both of you a minute

13:39:32  9  on this.  What I'm after is:  Is there a way that we can

13:39:36  10 simplify what we're arguing about today and simplify the record

13:39:40  11 that is going to be ultimately presented to an appellate court

13:39:45  12 if one or the other of you appeals, because from where I sit

13:39:49  13 right now, I've got to presume there's going to be an appeal.

13:39:52  14 And if there isn't -- we're ahead of the game, but if I presume

13:39:57  15 there's not going to be an appeal, then there for sure is going

13:40:00  16 to be an appeal.  So tell me what the State's position is on

13:40:03  17 this.

13:40:03  18       MR. STEPHENS:  Andrew Stephens for the State.

13:40:05  19       And I'll just respond briefly, Your Honor.

13:40:06  20 Ms. Klusmann is going to handle the bulk of our argument today.

13:40:09  21       THE COURT:  So you're just up to throw her under the

13:40:11  22 bus?

13:40:13  23    (Laughter)

13:40:13  24       MR. STEPHENS:  No.  The length of our brief -- and I

13:40:18  25 certainly understand that it's a lengthy brief -- we needed

13:40:22　1　those pages because the plaintiffs in this case chose to

13:40:25　2　challenge over sixty laws and regulations in the state.  And so

13:40:31　3　what Plaintiffs are doing is essentially challenging the entire

13:40:34　4　state regulatory system.  And so we felt that we needed to

13:40:39　5　address each of those laws, many of which the United States

13:40:42　6　Supreme Court and the Fifth Circuit have expressly held to be

13:40:45　7　constitutional, in that brief so that the Court would

13:40:48　8　understand the framework of what this case really is.  I won't

13:40:53　9　go further than that because I know Ms. Klusmann will be

13:40:56　10　explaining that in more detail in our argument.

13:40:59　11　　　　　　THE COURT:  So, Ms. Toti, is Mr. Stephens correct,

13:41:02　12　that you're challenging -- is that what I missed in this case,

13:41:06　13　that you were challenging the entire regulatory system of the

13:41:09　14　State of Texas?

13:41:11　15　　　　　　MS. TOTI:  No, Your Honor.  I would disagree with

13:41:13　16　that characterization.  The plaintiffs are challenging abortion

13:41:17　17　restrictions that fall within five specific categories.  And

13:41:20　18　we've identified the specific laws that we're challenging in

13:41:23　19　the complaint and the regulations that -- you know, that then

13:41:27　20　correspond to those laws.  It's not the entire regulatory

13:41:30　21　system and not even the entire regulatory system for abortion.

13:41:35　22　And we've identified very specifically in the complaint all of

13:41:37　23　the laws that would continue to regulate abortion, even if the

13:41:41　24　ones we are challenging are struck down.

13:41:44　25　　　　　　What we are trying to demonstrate is that, once upon

13:41:47 1  a time, Texas started out with a reasonable regime for

13:41:51 2  regulating abortion procedures and, over time, the State has

13:41:55 3  added incrementally more laws and more burdens that are not

13:41:59 4  reasonable.  And the system has become so burdensome and

13:42:07 5  unwieldy now that it's incredibly difficult for patients and

13:42:11 6  providers to navigate.  So we're asking the Court to strike

13:42:14 7  down those laws that we believe constitute an undue burden, but

13:42:17 8  it's far from every law in the state of Texas that regulates

13:42:20 9  abortion.

13:42:21 10      THE COURT:  Well, then let me tell each of you this.

13:42:24 11  Ms. Klusmann, Ms. Toti, you're going to handle the argument?

13:42:27 12      MS. TOTI:  Yes, Your Honor.

13:42:28 13      THE COURT:  What I want you to do -- I'm going to

13:42:31 14  hear argument today.  But I want you to pare it down to as few

13:42:37 15  words as you can make -- take under 30 minutes if you can -- on

13:42:42 16  why a motion to dismiss is appropriate.  That's all I want to

13:42:47 17  know.

13:42:49 18      And I'm going to tell you, if after I hear this

13:42:52 19  argument and I go back and review what we have, that I may not

13:43:01 20  rule and I may order both sides to replead this case, to take

13:43:06 21  out a lot of the verbiage and get it down to exactly the issue

13:43:13 22  that you're talking about Ms. Toti.  Because, honestly, when I

13:43:17 23  read through all of this, most recently this weekend -- all of

13:43:21 24  it I could stand this weekend -- I did not see it as that

13:43:26 25  simple a case.  I was concerned about what we have.

13:43:29 1        And I think we have far too much here in the way of

13:43:32 2   pleadings.  I don't think it -- it is harder to write less than

13:43:36 3   it is to write more.  And I was on your side of the bench for

13:43:39 4   28 1/2 years, and I constantly was having to tell myself you've

13:43:44 5   got to pare this down, you've got to pare this down, you've got

13:43:46 6   to pare this down.

13:43:47 7        Cases, particularly cases that involve the policy

13:43:51 8   arguments and the political situation that occur in cases that

13:43:57 9   have issues like this, need to be something that not only the

13:44:04 10  court understands and -- and by that I mean the court at every

13:44:07 11  level, whether it goes to the Circuit Court or the Supreme

13:44:09 12  Court -- and that the public understands.  Because I certainly

13:44:14 13  don't think any member of the public -- there may be a few of

13:44:18 14  you out there and few of you elsewhere -- could pull up these

13:44:21 15  pleadings on the website and have a really well-founded idea of

13:44:27 16  what it is we're really going to argue today.  So let me see

13:44:32 17  where we get with this argument, but I find this case difficult

13:44:38 18  to understand at this point with the status of the record.

13:44:44 19        So, with that having been said, it's the State's

13:44:48 20  motion.  Ms. Klusmann, you may proceed, and then are you going

13:44:52 21  to argue all of it, or are you going to leave some time for

13:44:54 22  Ms. Dippel or how are you going to divide this up.

13:44:57 23        MS. KLUSMANN:  Your Honor, I will begin with

13:44:59 24  20 minutes.  Ms. Dippel will then go for five and reserve five

13:45:02 25  for rebuttal.

13:45:03  1          THE COURT:  Okay.  Are you going to keep track of

13:45:07  2  your own time, or do you want me to?

13:45:07  3          MS. KLUSMANN:  I think we -- I think Ms. Oakes,

13:45:11  4  right, was going to let me know when my 20 minutes are up.

13:45:14  5          THE COURT:  That's fine.  I just wanted to know.

13:45:16  6          All right.  You may proceed.

13:45:37  7          MS. KLUSMANN:  Good afternoon, Your Honor.

13:45:38  8  Beth Klusmann for the State defendants.

13:45:40  9          May it please the Court:  Plaintiffs newest lawsuit

13:45:45  10  asks the Court to take the rather extraordinary step of

13:45:49  11  declaring unconstitutional nearly every statute and rule in

13:45:51  12  Texas related to abortion.  I take issue with Ms. Toti's

13:45:55  13  description of this case.  Right now we are challenging every

13:45:59  14  single regulation that applies to abortion facilities, nearly

13:46:05  15  every statute in chapter 171, which applies to the provision of

13:46:09  16  abortion, nearly every statute in chapter 245, which applies to

13:46:14  17  the regulation of abortions facilities, and I would at least

13:46:16  18  half of the statutes related to the provision of abortion to

13:46:20  19  minors.  It's probably easier to list the statutes that are not

13:46:25  20  being challenged than it is to list all of the statutes that

13:46:28  21  are being challenged.

13:46:29  22          Now, unlike the cases that you have previously heard

13:46:32  23  between these parties, these are not newly enacted laws that

13:46:35  24  are unique to Texas.  They are laws that have been on the books

13:46:39  25  for years, some of them for decades, and they are common across

13:46:43 1  the states.  And, finally, the idea that they all pose a

13:46:48 2  substantial obstacle to abortion is absurd on its face.

13:46:52 3        Some of the laws being challenged today include

13:46:54 4  requiring abortion facilities to sterilize their instruments

13:46:58 5  and allowing a woman to withdraw her consent to the abortion

13:47:02 6  and providing the woman with the name of the physician who will

13:47:05 7  be performing the procedure.

13:47:07 8        So what has caused Plaintiffs to conclude after all

13:47:11 9  of these years that these laws have suddenly become

13:47:14 10 unconstitutional?  They are overreaching based on the Supreme

13:47:18 11 Court's decision in *Whole Woman's Health v. Hellerstedt*.  They

13:47:22 12 believe that *Hellerstedt* ushered in a new era of abortion

13:47:26 13 jurisprudence where everything that has been long established

13:47:28 14 must now be questioned and challenge and weighed.

13:47:31 15       But *Hellerstedt* did not do that.  The majority in

13:47:34 16 *Hellerstedt* said it was simply following what the Supreme Court

13:47:37 17 had already required in *Casey*.  And this was confirmed just

13:47:41 18 last year by the Fifth Circuit in *June Medical Services v. Gee*.

13:47:46 19       There the Fifth Circuit said, yes, all *Hellerstedt*

13:47:50 20 did was apply *Casey*, and so the *Casey* standard still applies

13:47:53 21 today.  Therefore, anything constitutional under *Casey* remains

13:47:59 22 constitutional today.  We don't have to retry all of these

13:48:02 23 cases.

13:48:02 24       The argument I expect you'll hear from plaintiffs is

13:48:05 25 that the facts are different in Texas.  *Casey* concerned laws in

| | | |
|---|---|---|
| 13:48:08 | 1 | Pennsylvania; *Akron* concerned laws in Ohio.  But that's simply |
| 13:48:12 | 2 | not the case.  It is no more difficult for a physician in Texas |
| 13:48:16 | 3 | to fill out a report following an abortion than it was for a |
| 13:48:19 | 4 | physician in Pennsylvania to do the exact same thing, and *Casey* |
| 13:48:23 | 5 | upheld that law.  It is no more difficult for a minor in Texas |
| 13:48:28 | 6 | to prove maturity by clear and convincing evidence than it was |
| 13:48:32 | 7 | for a minor in Ohio.  And the Supreme Court upheld that rule. |
| 13:48:36 | 8 | For many of the statutes and rules, it's not actually |
| 13:48:40 | 9 | possible to come up with a set of facts that would demonstrate |
| 13:48:43 | 10 | that they are a substantial obstacle to abortion for a large |
| 13:48:47 | 11 | fraction of women in Texas, and that is the test that this |
| 13:48:50 | 12 | Court must apply. |
| 13:48:51 | 13 | Permitting this case to move forward and why we are |
| 13:48:55 | 14 | focused on this motion to dismiss, even just to the discovery |
| 13:48:58 | 15 | process, would be a very large waste of time and resources. |
| 13:49:02 | 16 | The State should not have to justify long-established laws by |
| 13:49:06 | 17 | hiring experts to testify that infection control procedures are |
| 13:49:10 | 18 | beneficial, that having sinks and a functioning toilet, or that |
| 13:49:18 | 19 | facilitating a woman's safety and comfort is beneficial. |
| 13:49:20 | 20 | The Court knows what litigation between these parties |
| 13:49:23 | 21 | is like.  You know what our discovery disputes are like.  You |
| 13:49:26 | 22 | know how we bring in experts.  You know how we question |
| 13:49:29 | 23 | everything.  And that was just for one or two laws.  We've got |
| 13:49:32 | 24 | over sixty here.  So that is way we are focused on this motion |
| 13:49:35 | 25 | to dismiss.  Even if the Court doesn't get rid of all of it, it |

13:49:39  1  absolutely must be narrowed before we proceed any farther in

13:49:42  2  this case.  But for the reasons I will describe, this entire

13:49:45  3  case should be dismissed because Plaintiffs' claims are

13:49:48  4  meritless and they lack standing.

13:49:49  5       THE COURT:  Is it possible for over a period of years

13:49:53  6  a state, any state, to enact laws that, at the end of the day,

13:50:02  7  have a cumulative effect of creating a substantial burden to a

13:50:08  8  woman's right to an abortion even though each one of them

13:50:13  9  standing alone may not be of such a magnitude as to create that

13:50:18  10  burden?

13:50:22  11       MS. KLUSMANN:  I don't think so, Your Honor.  And

13:50:23  12  that's the cumulative burden claim that we talked about.  And

13:50:26  13  Ms. Toti said that's not what they're alleging today; that they

13:50:28  14  are alleging these laws individually pose a substantial

13:50:32  15  obstacle.  But recognizing that type of claim would create

13:50:36  16  jurisdictional problems with causation and redressability.  If

13:50:39  17  no individual law is unconstitutional, how do you craft a

13:50:43  18  solution to that.  How do you trace causation?

13:50:46  19       You know, if we used the ASC law, for example, you

13:50:50  20  can see a clinic shut down because it was not an ambulatory

13:50:54  21  surgery center and, therefore, that was more difficult for

13:50:56  22  women to have an abortion then.

13:50:59  23       But here we've got which law put them over the top?

13:51:02  24  Was it the reporting requirement that caused clinics not to

13:51:06  25  open or women to be unable to get abortion?  Is it the fact

13:51:09  1   that they have to put their license number on an advertisement?

13:51:12  2   I just don't think that can -- that's not going to work in this

13:51:14  3   case.  And the solution cannot be to strike them all down, so

13:51:19  4   you would have to simply pick a few and see if that relieved

13:51:23  5   whatever burden was out there and, if that didn't work, maybe

13:51:26  6   pick a few others.

13:51:27  7           It would essentially require the Court to rewrite

13:51:29  8   abortion legislation in Texas.  And so I don't think such a

13:51:33  9   claim should be recognized, and the Supreme Court has yet to

13:51:36  10  recognize such a claim.

13:51:38  11          THE COURT:  Well, has the Supreme Court ever been

13:51:40  12  presented with such a claim?

13:51:42  13          MS. KLUSMANN:  I don't know if anyone has made that

13:51:44  14  specific argument.  But, if you look at their precedence, they

13:51:47  15  always consider them individually.  I think that -- I'm sorry.

13:51:51  16  I can't recall which case.  There was a dissent that said you

13:51:54  17  should be considering them all together, and the court didn't

13:51:56  18  do that.  I don't recall if the parties made that specific

13:51:59  19  argument.  But, you know, if you look at their cases, there's a

13:52:01  20  section on admitting privileges, a section on ambulatory

13:52:05  21  surgical.  You know, they just go law by law in their analysis.

13:52:08  22          THE COURT:  So they haven't specifically directed

13:52:10  23  themselves to that argument, but they also have not

13:52:13  24  specifically rejected the argument.

13:52:15  25          MS. KLUSMANN:  I would point to their response on

13:52:17   1   page 18 at note 8 where they say they are not bringing --

13:52:20   2   because it would be a novel claim, and Ms. Toti just said we're

13:52:24   3   not bringing this novel claim, we are challenging them all

13:52:27   4   individually.  And so we are taking them at their word for now,

13:52:30   5   that that is not the claim they are bringing.  But, obviously,

13:52:33   6   you know, if the case proceeds further, we'll see if that's

13:52:36   7   what their intention is.

13:52:38   8          I would like to spend a little time first off on

13:52:43   9   standing, move to a few examples of our 12(b)(6) arguments just

13:52:48  10   to sort of illustrate what we're dealing with here, and then

13:52:49  11   talk about the chancellor for the university systems because

13:52:52  12   he's kind of the odd man out in all of this litigation.

13:52:56  13          First as to standing as to the provider plaintiffs,

13:52:59  14   Dr. Kumar and Whole Woman's Health Alliance, they rely

13:53:02  15   primarily on third-party standing and cite the rule that

13:53:04  16   standing is typically granted to abortion providers to assert

13:53:08  17   the constitutional rights of their patients.  But this is not a

13:53:12  18   typical case.  As we said, those previous cases have involved

13:53:16  19   the one to two laws.  This case involves dozens, including

13:53:19  20   every single health and safety regulation that apply to

13:53:22  21   abortion facilities.

13:53:24  22          Now, the plaintiffs do have to prove third-party

13:53:27  23   standing because what they are essentially doing is coming into

13:53:30  24   court and standing in the shoes of their patients.  They are

13:53:33  25   saying I will assert the claims my patients want me to assert.

13:53:36 1    I will protect their best interests.  But in this case, like I

13:53:40 2    said, Plaintiffs have challenged all of the health and safety

13:53:42 3    regulations, they've challenged all of the informed consent

13:53:45 4    procedures which allow women to make fully informed choices.

13:53:49 5          According to Plaintiffs, if women were here in this

13:53:52 6    court today, they would ask this Court to strike down the

13:53:55 7    infection control procedures that are applied to abortion

13:53:59 8    clinics.  They would say it is unconstitutional to cap the

13:54:03 9    amount that could be charged for an ultrasound.  Women

13:54:07 10   therefore want, apparently, according to plaintiffs, to be able

13:54:09 11   to pay more money for their ultrasound.  They would ask to be

13:54:13 12   kept in the dark about the drugs that they are being

13:54:16 13   prescribed.  That is nonsensical, to think that women would

13:54:19 14   come into court and want this to be the law.

13:54:22 15         So what are the providers' interests in this case?

13:54:24 16   If we look at paragraph 196 of their complaint, they envision a

13:54:28 17   world in which all of these laws have been struck down and that

13:54:31 18   abortion providers will have more diverse revenue streams and

13:54:35 19   their medical practices are economically sustainable.

13:54:38 20         So right now this case does in fact pit the

13:54:41 21   providers' financial interests against the interests of the

13:54:45 22   women whose rights they claim to be representing.  The Court

13:54:48 23   should not allow that conflict of interest to stand and should

13:54:51 24   deny third-party standing.

13:54:53 25         The same applies to the Fund plaintiffs.  The Fund

13:54:59  1  plaintiffs are five entities that assist women in paying for

13:55:05  2  abortion.  They have absolutely no rights at stake in this

13:55:07  3  litigation because they don't have to comply with any of these

13:55:10  4  laws.  Again, their interest is purely financial.  They want

13:55:14  5  their dollar to go further.  And they are doing so, again, at

13:55:17  6  the expense of the health and safety interests of their

13:55:20  7  patients -- excuse me -- their clients.

13:55:22  8         And I think it is telling that their first defense

13:55:25  9  when we challenge their standing is that it doesn't matter if

13:55:28  10  they have standing because Dr. Kumar has standing and, as long

13:55:32  11  as one person has standing, we can move forward.  That may be

13:55:36  12  the case in an appellate court where the appellate court is

13:55:38  13  going to have to decide the legal issue regardless of how many

13:55:42  14  plaintiffs bring it, but it is far from the case in a trial

13:55:44  15  court.

13:55:46  16         If you consider it from a discovery perspective, are

13:55:49  17  we going to have to take discovery from two plaintiffs or are

13:55:51  18  we going to have to take discovery from seven plaintiffs?  Are

13:55:56  19  we going to receive discovery from two plaintiffs, or are we

13:55:59  20  going to receive discovery from seven plaintiffs?  You don't

13:56:02  21  get to tag along in a lawsuit just because someone else has

13:56:09  22  standing.  You don't get to impose burdens on litigation just

13:56:13  23  because someone else has standing.

13:56:14  24         And then just one final note on standing is there is

13:56:17  25  a causation problem.  Plaintiffs' lawsuit basically says that

someday, somewhere, someone might want to open a clinic in
Texas, and some of these laws -- we're not sure which ones --
might make that harder for them to do so. Those "someday"
intentions, according to *Lujan*, are not sufficient to support
standing and they are not sufficient to support a ripe claim.

So for those reasons we would ask the Court to grant
our 12(b)(1) motion.

Moving to 12(b)(6), just a few sort of broad points,
and then I'll illustrate with a few examples. Again,
Plaintiffs claims are barred by existing precedent.
*Hellerstedt* did not change that. And they can't get around
that precedent by claiming that their facts are different.
They have to allege facts under Rule 8 that demonstrate a
substantial obstacle to a large fraction of women in Texas.
And their complaint gives no -- nothing in their complaint
suggestions that this will be possible.

So let's try the physician-only requirement. No less
than five Supreme Court cases have said that states may
restrict the performance of abortion or the informed consent
process to physicians. This actually originated in *Roe v. Wade*
at page 165. The court there said: A state may define a
physician to mean those licensed by the state, and it may
restrict the performance of abortion to those physicians. That
was again repeated or affirmed in *Connecticut v. Menillo*, *City
of Akron*, *Casey*, and *Mazurek*.

So this is as close to a pure issue of law as we're going to see in this case. Now, if Plaintiffs come back and may want to say, well, the facts in Texas are different, they haven't pleaded anything different. There is no allegation anywhere in their complaint that there is any nonphysician in Texas who wants to perform abortions and is being barred from doing so. There is no allegation in their complaint of where this hypothetical person might be, how this hypothetical person might ease the burden on women. And there's no allegation that opening up the performance of abortion to nonphysicians would eliminate any burden that women supposedly face right now. There is no reason to call into question decades of Supreme Court precedent and allow the physician-only complaint to go forward.

Plaintiffs challenge to the facility licensure requirements demonstrates the absurdity of many of their claims as well as the reasons why we need to address this now, before having to engage in expensive discovery.

*Roe* again said that states could require abortion facilities to be licensed. And it said of course you can do so, for health and safety reasons, to ensure the safety of patients. Now, if you look at the Fourth Circuit opinion we cite, *Greenville Women's Clinic v. Bryant*, they considered many of these same regulations and upheld them, noting that they were actually very similar to the standards proposed by the

13:59:08  1  National Abortion Federation and ACOG.  Plaintiffs don't

13:59:11  2  address any of this.  They just say that they are, quote,

13:59:14  3  medically inappropriate, end quote.

13:59:16  4          But, again, we are talking about sterilization and

13:59:19  5  infection control, having clinical policies that govern the

13:59:24  6  provision of care, requiring training for employees, requiring

13:59:27  7  a physician, a physician assistant, or a nurse to be present

13:59:31  8  when a patient is in surgery or in the recovery room.  These

13:59:35  9  are normal regulations of medical facilities, and they are not

13:59:39  10  new.  Most of these can be traced back to the '80s.

13:59:42  11          And so if we're looking at challenging them now in

13:59:46  12  terms of discovery, that's the time period we're going to have

13:59:49  13  to cover.  We're going to be starting in 1985 and figuring out

13:59:53  14  why these were enacted then, what was the purpose, was there a

13:59:56  15  need for them, and trace that all the way back through to

13:59:59  16  today.

14:00:00  17          Now, these regulations may be specific to abortion

14:00:02  18  facilities, but they are not unique to them.  If you look at

14:00:05  19  other state regulations of medical facilities, such as for

14:00:09  20  birthing centers or for end-stage renal disease facilities,

14:00:13  21  you're going to see the exact same thing: sterilization and

14:00:16  22  infection control; policies and procedures; functioning

14:00:20  23  toilets, sinks, and handwashing stations.  The abortion

14:00:24  24  facilities are regulated as medical facilities are regulated.

14:00:31  25          A quick point on medication abortion:  Plaintiffs

14:00:33  1  challenge the requirement that the woman -- the physician

14:00:38  2  physically examine the woman prior to performing the -- or

14:00:43  3  prescribing the drugs.  Plaintiffs call this medically

14:00:45  4  unnecessary but it is necessary to determine whether the

14:00:48  5  pregnancy is ectopic because, as was noted in the *Planned*

14:00:52  6  *Parenthood v. Taft* case, it's contraindicated for ectopic

14:00:58  7  cases, a medication abortion is, and at least one woman has

14:01:00  8  died as a result of taking those drugs.

14:01:02  9          Plaintiffs offer no explanation how they're going to

14:01:05  10  determine whether a woman has an ectopic pregnancy other than

14:01:09  11  through a physical exam.  Their quest to not have to perform

14:01:13  12  that exam is unconscionable.  No more-diverse revenue streams

14:01:19  13  is worth endangering women.

14:01:26  14          My final example is the 24-hour waiting period.  This

14:01:27  15  was constitutional under *Casey*, and Texas law is actually less

14:01:31  16  burdensome because it has an exception for women who must

14:01:33  17  travel more than 100 miles.  So, as a matter of law, *Casey* said

14:01:38  18  a 24-hour waiting period is fine.  Texas's is even less

14:01:40  19  burdensome.

14:01:41  20          And if you look at what the district court found in

14:01:44  21  *Casey*, the district court found that there would be a minimum

14:01:46  22  of two trips, delays of 48 hours to two weeks, additional

14:01:51  23  exposure to harassment, travel of one to three hours for many

14:01:56  24  women, loss of wages, increased complications, and significant

14:01:59  25  impacts on the poor and young.  The Supreme Court recognized

14:02:02 1 all that, acknowledged all that, and said that is insufficient

14:02:05 2 to demonstrate that those burdens outweigh the benefits of the

14:02:10 3 24-hour waiting period.

14:02:11 4        Paragraphs 165 to 180 of Plaintiffs' complaint, they

14:02:15 5 use more words, but it's the same burdens: travel delay and

14:02:19 6 costs.  There is no allegation that this is a -- causes a

14:02:23 7 substantial obstacle to a large fraction of women in Texas.

14:02:28 8        My time is running short.  I want to make sure I get

14:02:31 9 to Chancellor Milliken, as that is one of the claims that has

14:02:35 10 been a little hard to get our hands around.  The current theory

14:02:40 11 as expressed in Plaintiffs' response to our motion to dismiss

14:02:43 12 is that the chancellor violated the United States Constitution

14:02:46 13 because an unknown employee at the University of Texas at

14:02:48 14 Arlington rejected the Lilith Funds' application to host

14:02:53 15 college interns.

14:02:54 16        So this does actually present us with an opportunity

14:02:57 17 to return to the original principles behind *Ex parte Young*.

14:03:01 18 Injunctive suits against state officials are barred unless they

14:03:04 19 are actually violating the law.  Well, there are no allegations

14:03:08 20 that the UT chancellor had anything to do with the denial of

14:03:14 21 the Lilith Fund's application.  There is no statute, there is

14:03:17 22 no board rule, there is no regulation that puts him in charge

14:03:20 23 of making that decision.

14:03:21 24        This case is therefore unlike cases in which a

14:03:24 25 statute or regulation puts, say, the Attorney General or the

14:03:27  1   head of an agency in charge of something, and they delegate

14:03:31  2   that to someone else.  Here, Chancellor Milliken had absolutely

14:03:35  3   no involvement with that decision, and there's no statute that

14:03:37  4   told him he should be involved.  Therefore, because he did no

14:03:41  5   wrong, his sovereign immunity remains intact, and he cannot be

14:03:45  6   sued under *Ex parte Young*.

14:03:48  7         I think I have used just about all of my initial

14:03:50  8   20 minutes.  I will obviously rely on our briefing, extensive

14:03:55  9   as it was, for the rest of our arguments.  But I will turn it

14:03:58  10  over to Ms. Dippel.

14:04:00  11        THE COURT:  Thank you.

14:04:08  12        Ms. Dippel, this may be the first time in my career

14:04:10  13  that, when somebody spoke second, they actually get the time

14:04:13  14  they were promised by their colleague.  Usually, you can just

14:04:18  15  count on getting less time than the way you worked it out.  So

14:04:21  16  you may proceed.

14:04:23  17        MS. DIPPEL:  Thank you.  Thank you, co-counsel, and

14:04:25  18  may it please the Court:

14:04:26  19        Opposing counsel and co-counsel, we appreciate how

14:04:28  20  well we've all been working together culminating in this

14:04:32  21  hearing today.

14:04:32  22        But Travis County Attorney David Escamilla has moved

14:04:36  23  to dismiss this lawsuit against him because he is unnecessary

14:04:39  24  to the relief that Plaintiffs seek.  I don't intend to repeat

14:04:42  25  the reasoned argument of the State, but I do want to highlight

14:04:45  1  the unique status of David Escamilla, as the elected

14:04:49  2  misdemeanor prosecutor in Travis County on these facts makes

14:04:53  3  him unnecessary to the substantive question of this lawsuit.

14:04:57  4       The substantive issue in this lawsuit is the

14:04:59  5  constitutionality of the State statutes, a question over which

14:05:05  6  he has no control or authority other than prosecuting,

14:05:08  7  potentially, criminal statutes that are on the books.  If a

14:05:13  8  statute is determined to be unconstitutional, there's not a

14:05:15  9  statute for which he could prosecute.

14:05:19  10       Our arguments are mainly regarding standing and

14:05:22  11  ripeness.  First, of course, to establish standing a plaintiff

14:05:27  12  must have suffered an injury-in-fact.  And to establish an

14:05:31  13  injury-in-fact, a plaintiff must show that he or she has

14:05:34  14  suffered an invasion of a legally protected interest that is

14:05:37  15  concrete and particularized, not conjectural or hypothetical.

14:05:43  16  That's a quote from the *Spokeo, Incorporated* case, the Supreme

14:05:44  17  Court case.

14:05:45  18       When contesting the constitutionality of a criminal

14:05:48  19  statute, it is not necessary that a plaintiff first be exposed

14:05:51  20  to an actual arrest or prosecution to be entitled to challenge

14:05:54  21  that statute, but they must have fear of a state prosecution

14:06:00  22  that is more than a imaginary or speculative.  That case has

14:06:04  23  come from younger very -- that quote comes from the *Younger v.*

14:06:08  24  *Harris* case.  Otherwise, they lack standing.

14:06:11  25       So, with that background, the plaintiff has to prove

14:06:13 1  that there's a credible threat that is more than speculative.

14:06:17 2  Plaintiffs do not allege facts establishing those two

14:06:22 3  components to establish standing against the county attorney.

14:06:25 4       For example, the Plaintiffs Texas Choice, Lilith

14:06:28 5  Fund, or Texas Equal Fund, all funds plaintiffs, are nonprofit

14:06:32 6  organizations that only provide informational and financial

14:06:35 7  resources, as you've already heard.  They do not perform those

14:06:38 8  services and are not subject to those acts and, therefore,

14:06:41 9  certainly not subject to prosecution by the county attorney.

14:06:44 10      Also Whole Woman's Health Alliance and Dr. Kumar do

14:06:47 11 not allege a credible threat of prosecution by the county

14:06:50 12 attorney.  Neither plaintiff alleges facts that the challenged

14:06:53 13 criminal penalties have or will imminently be applied to them.

14:06:58 14 They only assert that those criminal penalties exist and apply

14:07:02 15 their general applicability to them as providers.  *Younger v.*

14:07:07 16 *Harris* informs that this is not enough to establish standing.

14:07:10 17      As I've said, of course, Plaintiffs do not have to

14:07:13 18 wait to be prosecuted to establish standing, but they have to

14:07:16 19 at least assert facts articulating a credible threat of

14:07:20 20 prosecution.  And neither plaintiff alleges they are subject to

14:07:23 21 a pending prosecution, subject to an investigation of a

14:07:26 22 criminal statute or that a prosecution is likely, or that any

14:07:31 23 of their current or future conduct is in or could be in

14:07:34 24 violation of the complained of laws.  They have not alleged

14:07:37 25 they have even been contacted by the county attorney or any

1 prosecutor.

2       Even if plaintiffs have not, but intend, to violate

3 the named statutes, they still have not shown the intention to

4 engage in a course of conduct arguably affected that would

5 provide the basis for a credible prosecution thereunder.  The

6 basic tenet is that there has got to be some exposure to

7 prosecution that is more than speculative.

8       I quote from the *Empower Texans* case out of the

9 Western District of Texas in the Midland Division.  *Empower*

10 *Texans v. Nodolf*:  Empower Texans had filed a lawsuit against

11 District Attorneys for Midland, Tarrant, and Travis Counties

12 and the Texas Attorney General, seeking to enjoin them from

13 initiating an investigation or prosecution of another law.

14 They allege the statute violated their rights under the First

15 and Fourteenth Amendments.  And in that case there was a

16 complaint by a citizen sent to the DA's office, and the DA

17 had -- one DA in the office had commented that that complaint

18 was under review.

19       The judge granted motions to dismiss on standing

20 grounds, finding that they did not establish an injury-in-fact.

21 The court reasoned that the fear of prosecution based on a

22 citizen complaint and an acknowledgment that it was received

23 and under review, the did not provide standing.  And here the

24 plaintiffs have alleged even less against the county attorney.

25       The county attorney has also raised ripeness grounds

14:09:05 1  that are similar. Of course, a claim is not ripe for

14:09:08 2  adjudication if it rests upon contingent future events that may

14:09:12 3  not occur as anticipated. Same set of facts, same -- same

14:09:17 4  background of the law, that you have to prove something that is

14:09:19 5  more than conjecture or speculative. They have not asserted a

14:09:24 6  qualifying hardship in order to render their claims ripe for

14:09:29 7  review by this Court.

14:09:30 8       It is important to note, as has already been

14:09:33 9  mentioned, that based upon the allegations in the complaint,

14:09:36 10  the majority of all of these statutory revisions have been on

14:09:38 11  the books for years and some for decades. There being no

14:09:41 12  allegation of a prosecution thereunder is further evidence that

14:09:44 13  a fear of such prosecution is merely speculative and

14:09:48 14  conjectural.

14:09:49 15       The plaintiffs themselves also acknowledge that the

14:09:50 16  challenge of the criminal penalty portion is secondary to the

14:09:53 17  Court's determination of constitutionality. And I quote from

14:09:56 18  their response to State's motion to dismiss, page 14:

14:09:59 19  Plaintiffs do identify the imposition of certain criminal

14:10:02 20  penalties on abortion providers as an additional constitutional

14:10:07 21  violation.

14:10:07 22       But they make this claim in the alternative to their

14:10:11 23  claim that it's substantive that the challenged laws are

14:10:13 24  unconstitutional. In other words, Plaintiffs ask the Court in

14:10:15 25  the first instance to strike down the substantive provisions.

14:10:18 1  Should the Court do so, Plaintiffs' claims against the criminal

14:10:22 2  penalties are moot.

14:10:25 3          Plaintiffs themselves have told you that we're a

14:10:27 4  secondary thought.  We only come into play should there be a

14:10:30 5  constitutional statute, that there has been been more than a

14:10:36 6  credible threat, and prosecution exists.  *Baker v. Wade* tells

14:10:40 7  us the Texas Attorney General is the appropriate representative

14:10:43 8  to defend those statutes.  We're just here for the prosecution

14:10:46 9  of same, should they become constitutional, should there even

14:10:50 10 be an allegation of such.

14:10:52 11         The District Court should decline to issue an

14:10:54 12 injunction where there's no allegation or proof that a

14:10:57 13 prosecutor would not comply with its decision should there be

14:11:00 14 one.  There's been no allegation at all, no allegation of fact,

14:11:03 15 that the county attorney would not comply with the Court's

14:11:06 16 order.

14:11:06 17         And for all of those reasons, Defendant Escamilla

14:11:12 18 requests the claims against him be dismissed in his official

14:11:15 19 capacity and as representative of all the prosecutors.

14:11:19 20         THE COURT:  Thank you.

14:11:21 21         Ms. Toti, will you carry all of the argument for the

14:11:23 22 respondents?

14:11:24 23         MS. TOTI:  Yes, Your Honor.

14:11:24 24         THE COURT:  All right.  Then you may argue straight

14:11:27 25 through for 30 minutes.

MS. TOTI: Thank you. Your Honor, there are two preliminary issues that I wish to address. The first is that Plaintiffs agree with the State that the Supreme Court decision in *Whole Woman's Health* did not alter in any way the Supreme Court's earlier decision in *Planned Parenthood v. Casey*. But the *Whole Woman's Health* decision did abrogate the Fifth Circuit's undue burden jurisprudence.

The Supreme Court recognized that the Fifth Circuit had been applying, essentially, a rational basis test to abortion restrictions for decades, wrongly so, and upholding laws that should have been struck down. So when the State says that we are seeking to challenge laws that have been on the books for years and haven't previously been questioned, their position fails to take into account that the governing circuit law that was in effect for all of that time has now been overruled, and laws that went unchallenged under a rational basis standard are now worthy of scrutiny under the correct standard, as the Supreme Court articulated in *Whole Woman's Health*.

Secondly, I'd like to note that if the statutory licensing requirement for abortion providers that plaintiffs have challenged is struck down, then all of the regulations implemented pursuant to that requirement must also be struck down.

This Court and the Supreme Court addressed a very

14:13:10    1  similar issue in *Whole Woman's Health* where the plaintiffs had

14:13:14    2  challenged an ambulatory surgery center requirement, and the

14:13:18    3  State of Texas had argued that the Court ought to consider

14:13:22    4  every single ambulatory surgical center regulation in isolation

14:13:28    5  and upheld the ones that did not, in and of themselves, impose

14:13:32    6  an undue burden, like the handwashing requirements and the

14:13:35    7  functional toilets and so on.  And, ultimately, this Court and

14:13:38    8  the Supreme Court decided that the regulations can't be severed

14:13:42    9  from the statutory requirement.  If the statute falls, the

14:13:46   10  regulations must fall.

14:13:48   11        And so the State is essentially constructing a

14:13:50   12  straw man by focusing on those regulations adopted pursuant to

14:13:55   13  the licensing requirement.  The real issue is whether the

14:13:58   14  licensing requirement itself imposes an undue burden.  And, if

14:14:02   15  it does, then all of the regulations adopted pursuant must be

14:14:06   16  struck down.

14:14:10   17        Your Honor, I'd like to turn to address the

14:14:13   18  Plaintiffs' standing briefly and then go on to address the

14:14:18   19  merits of Plaintiffs' claims, also briefly.

14:14:23   20        It's well settled that abortion providers have

14:14:26   21  standing to assert the rights of their patients.  Controlling

14:14:28   22  Fifth Circuit case law establishes that both physicians who

14:14:31   23  provide abortions and clinics that provide abortions have

14:14:36   24  standing to assert their patients' rights.  *Plant Parenthood v.*

14:14:40   25  *Abbott*, decided in 2014, addresses physician standing, and

14:14:44  1  *Deerfield Medical Center*, decided in 1981, addresses clinic

14:14:51  2  standing.  There's been no intervening development in the law

14:14:56  3  that abrogates either one of those cases with respect to the

14:15:00  4  standing issue.

14:15:00  5         Defendants' contention that abortion providers'

14:15:02  6  interests conflict with their patients' interests has been

14:15:06  7  repeatedly rejected by this Court and the Fifth Circuit.

14:15:10  8  Tellingly, Defendants haven't been able to cite a single case

14:15:13  9  from any jurisdiction in which a court found that such a

14:15:18  10  conflict of interest exists and should defeat the standing of

14:15:24  11  abortion providers.

14:15:26  12         Defendants' conflict of interest argument is really

14:15:28  13  an attempt to shoehorn their position on the merits of

14:15:31  14  Plaintiffs' claims into an argument about standing.  Defendants

14:15:34  15  contend that the challenged laws provide net benefits to

14:15:38  16  patients, and so, therefore, it's in the patients' interests

14:15:41  17  for the laws to be upheld.  But whether those laws provide net

14:15:47  18  benefits to patients is a disputed factual issue that goes to

14:15:51  19  the heart of plaintiffs' undue burden claims.

14:15:53  20         If in fact the State is correct and those laws are

14:15:57  21  more beneficial than burdensome, then Plaintiffs will lose on

14:16:01  22  the merits.  But Plaintiffs fully intend to bring forth

14:16:10  23  evidence to demonstrate that those laws are not more beneficial

14:16:13  24  than burdensome, that, in fact, they impose undue burdens on

14:16:16  25  their patients and that they should be struck down.

14:16:18  1          But the case law makes clear that the merits inquiry

14:16:22  2     is distinct from the standing inquiry.  And to uphold the

14:16:27  3     plaintiffs' standing, the Court doesn't need to make a

14:16:29  4     determination about the likelihood of their success on the

14:16:32  5     merits, only that they have a sufficient stake in the outcome

14:16:35  6     of the proceedings and that the requirements for a third party

14:16:39  7     standing are met.  Those requirements are having a close

14:16:44  8     relationship with the third party and that the third party

14:16:49  9     faces obstacles to asserting their own rights.

14:16:52  10         Here there is no question the State has made no

14:16:56  11    argument that abortion patients don't face obstacles to

14:17:00  12    asserting their own rights, and it's well established by the

14:17:02  13    case law that they do.  So the only real issue is whether the

14:17:07  14    plaintiffs have the requisite close relationship with their

14:17:11  15    patients to satisfy the requirements for third-party standing.

14:17:17  16    And in this context "a close relationship" doesn't mean a

14:17:20  17    close, personal relationship.  Rather, it means that the party

14:17:25  18    bringing suit will serve as an effective advocate for the third

14:17:30  19    party's rights.

14:17:30  20         So in *Singleton v. Wulff*, the Supreme Court explained

14:17:33  21    that the requirement is met where enjoyment of the right is

14:17:37  22    inextricably bound up with the activity that the litigant

14:17:39  23    wishes to pursue and where the relationship between the

14:17:42  24    litigant and the third party is such that the former is fully,

14:17:44  25    or very nearly as effective, a proponent of the right as the

14:17:49 1 latter.

14:17:49 2      That is certainly the case for the provider

14:17:52 3 plaintiffs. They wish to provide abortion care, their patients

14:17:57 4 wish to access abortion care, their interests are fully

14:18:02 5 aligned, and the providers have every incentive to serve as

14:18:05 6 effective advocates for their patients' rights.

14:18:10 7      This test is also satisfied for the Abortion Fund

14:18:15 8 patients. The Funds are charitable organizations that assist

14:18:22 9 people with unwanted pregnancies gain access to abortion.

14:18:26 10 That's their mission. They have no financial stake in the

14:18:29 11 performance of abortions, only a moral imperative to ensure

14:18:33 12 that poverty doesn't prevent people from exercising their

14:18:37 13 constitutional right to end an unwanted pregnancy.

14:18:42 14      The Fund plaintiffs satisfy the requirements of

14:18:45 15 Article III for standing because the challenged laws require

14:18:49 16 them to spend additional time and money to facilitate their

14:18:53 17 clients' access to abortion care, and the case law makes clear

14:18:56 18 that that kind of diversion of resources by a nonprofit

14:19:00 19 organization constitutes an injury-in-fact for standing

14:19:04 20 purposes.

14:19:05 21      Plaintiffs' briefs cite both *Havens Realty Corp.*, a

14:19:09 22 Supreme Court case from 1982, and *OCA Greater Houston*, a Fifth

14:19:14 23 Circuit case from 2017. Both of those cases involved nonprofit

14:19:22 24 organizations that were involved in counseling clients or

14:19:28 25 stakeholders, making referrals, helping them gain access to

14:19:32  1  services.  And in each case the court held that the -- the laws

14:19:37  2  or the state practices that were being challenged would require

14:19:43  3  greater expenditure of resources by the nonprofit organization

14:19:46  4  and would divert resources from its core motion, and that was

14:19:49  5  sufficient to satisfy the requirements for standing.

14:19:54  6         With respect to the close relationship, the Fund

14:20:00  7  plaintiffs will serve as effective advocates for their clients

14:20:04  8  because their interests are completely bound up with their

14:20:08  9  clients' interests.  The clients seek to access abortion care;

14:20:12  10  the Fund plaintiffs seek to help them access abortion care, and

14:20:16  11  they have every incentive to be effective advocates for their

14:20:19  12  clients' rights.

14:20:21  13         The Supreme Court has found the close relationship

14:20:23  14  test to be satisfied by a wide variety of relationships,

14:20:27  15  including criminal defendants and potential jurors excluded

14:20:31  16  from jury service, that's *Powers v. Ohio*; a company selling

14:20:36  17  nonmedical contraceptives and potential customers, including

14:20:41  18  minors, that's *Carey v. Population Services*; beer vendors and

14:20:45  19  potential customers, that's *Craig v. Boren*; and white property

14:20:50  20  owners and potential black purchases, that's *Barrows v.*

14:20:54  21  *Jackson*.

14:20:54  22         Contrary to Defendants' assertions, the Supreme

14:20:56  23  Court's 2004 decision in *Kowalski v. Tesmer* did not abrogate

14:21:03  24  any of those cases.  *Kowalski* itself cites many of them with

14:21:07  25  approval.  It's also cites *Singleton v. Wulff* with approval.

14:21:12  1  And many of those cases were cited with approval in the Supreme

14:21:15  2  Court's 2017 decision in *Sessions v. Morales-Santana* which also

14:21:22  3  concerned third-party standing.

14:21:23  4          The Fifth Circuit's decision in Abbott came a full

14:21:26  5  decade after *Kowalski*.  The Supreme Court's 2016 decision in

14:21:30  6  *Whole Woman's Health* didn't question the plaintiff abortion

14:21:34  7  providers' standing to assert their patients' rights.  Had

14:21:38  8  there been any doubt about the Plaintiffs' standing in that

14:21:40  9  case, the Supreme Court would have had an obligation to examine

14:21:45  10  it *sua sponte*.  So there's -- it is well settled that

14:21:52  11  third-party standing is appropriate in this case, and the

14:21:54  12  defendants cite no case law that suggests that those

14:22:01  13  well-settled rules should not be applied here.

14:22:08  14          Turning to the merits of the case, the State

14:22:10  15  defendants' motions completely ignore the standard for

14:22:12  16  dismissal under Rule 12(b)(6).  The Fifth Circuit has

14:22:15  17  explained, relying on Supreme Court precedent, that a court

14:22:19  18  evaluating a motion to dismiss under Rule 12(b)(6) must accept

14:22:23  19  all well-pleaded facts as true and view those facts in the

14:22:26  20  light most favorable to the plaintiffs.

14:22:29  21          Just last year in the *Littell* case, the Fifth Circuit

14:22:33  22  summarized the well-settled rule that to survive a motion to

14:22:36  23  dismiss, a complaint need not contain detailed factual

14:22:40  24  allegations.  Rather, it need only allege facts sufficient to

14:22:45  25  state a claim for relief that is plausible.  It explained that

14:22:49  1   a complaint may proceed even if --

14:22:52  2          THE COURT:  Well doesn't the line of cases -- all of

14:22:54  3   the line of cases after *Iqbal* and *Twombly* say that there has to

14:23:00  4   be a direct link in a pleading to a particular factual

14:23:08  5   situation with regard to a particular party as opposed to just

14:23:12  6   generally pleading the statute and saying that it's wrong as

14:23:18  7   applied to a group?  Do your pleadings accurately link up the

14:23:23  8   facts to the allegations in your pleading on a case-by-case

14:23:27  9   basis?

14:23:28  10         MS. TOTI:  Yes, Your Honor.  What the cases say --

14:23:34  11  and those standards I was citing were from Fifth Circuit cases

14:23:37  12  decided in 2018, so they're not -- it's not old law.  The

14:23:43  13  allegations in the complaint can't be merely conclusory.  So

14:23:48  14  it's not enough for the plaintiffs to say:  This law imposes an

14:23:52  15  undue burden and is therefore unconstitutional.  There need to

14:23:55  16  be factual -- genuine, factual allegations to support the

14:24:00  17  claim.  But those allegations don't need to be detailed.  A

14:24:05  18  short --

14:24:06  19         THE COURT:  Well, what is an allegation that is not a

14:24:12  20  detailed allegation but is more than "the statute is

14:24:16  21  unconstitutional"?

14:24:20  22         MS. TOTI:  Your Honor, Plaintiffs' complaint

14:24:22  23  identifies an array of specific burdens that the challenged

14:24:26  24  laws impose on people seeking access to abortion, including

14:24:29  25  that each of the laws makes abortion harder to access and less

14:24:34 1  affordable than it would otherwise be.  Each of them

14:24:38 2  stigmatizes abortion patients and delays them from accessing

14:24:43 3  the care that they want if we're requiring them to be pregnant

14:24:48 4  for a longer period of time.

14:24:50 5          THE COURT:  Do your allegations point out those undue

14:24:56 6  burden facts that you allege with regard to individual named

14:25:01 7  plaintiffs or the individual patients?

14:25:10 8          MS. TOTI:  Your Honor, the complaint alleges that all

14:25:12 9  patients seeking access to abortion care, including -- so,

14:25:15 10 therefore, including the patients treated by Plaintiffs on the

14:25:20 11 day that the complaint was filed, those patients treated by

14:25:24 12 Plaintiffs or assisted by the abortion funds today, and those

14:25:27 13 who will be assisted at every stage of this litigation, are

14:25:32 14 impacted by the laws.  And the complaint further pointed out

14:25:37 15 that for certain groups of people, including poor people,

14:25:41 16 immigrants, people of color, those burdens are heightened, but

14:25:45 17 for -- for everyone those burdens are substantial.

14:25:48 18         THE COURT:  Well, what is your best authority that it

14:25:51 19 can be pleaded that way?  It seems to me that that comes close

14:26:01 20 to just saying:  Here's the statute.  It's clear that it

14:26:06 21 creates an undue burden on these particular people, including

14:26:11 22 minority groups; therefore, we prevail.  Is that what you're

14:26:19 23 saying satisfies the pleadings standard, and, if so, what's

14:26:23 24 your best authority on that?  Because I'm concerned that the

14:26:26 25 pleading jurisprudence in this country has gotten a lot tighter

| | |
|---|---|
| 14:26:31 | 1 |

than what you're describing to me, and I want to look at it

very carefully.

MS. TOTI:  I understand the Court's concern.  The

best authority, I believe, is the Littell case from the Fifth

Circuit.  And that's at 894 F.3d 616.  And specifically --

THE COURT:  Spell the name of the first party in that

so I make sure I have it.

MS. TOTI:  Yes.  It's L-i-t-t-e-l-l, and it's cited

in the Plaintiffs' brief.  And specifically at page 622 of that

opinion, the court says:  To survive a motion to dismiss, a

complaint need not contain detailed factual allegations.

Rather, it need only allege facts sufficient to state a claim

for relief that is plausible on its face.

I would also point out to the Court the U.S. Supreme

Court's decision in *Johnson v. City of Shelby*, also cited in

the Plaintiffs' brief.  And that's at 135 S. Ct. 346.  And it's

only a one-page *per curiam* opinion decided in 2014, so quite

recently.  In there the Supreme Court held that the federal

pleading rules do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim

asserted.

That particular case concerned allegations of

misconduct and unconstitutionality by municipal officials.  The

Court of Appeals dismissed the case because the complaint

failed to cite Section 1983, and the court said that the legal

14:28:17  1   theory wasn't correctly articulated in the complaint.  And the

14:28:21  2   U.S. Supreme Court reversed and reinstated the case, and it

14:28:25  3   said:  Having informed the City of the factual basis for their

14:28:30  4   complaint, the plaintiffs were required to do no more than

14:28:34  5   stave off threshold dismissal for want of an adequate statement

14:28:39  6   of their claim.

14:28:39  7        So, again, the Supreme Court relied on Rule 8's

14:28:43  8   statement -- Federal Rule of Civil Procedure 8, saying that all

14:28:47  9   that is required is a short and plain statement of the case and

14:28:52  10  that the pleadings need to be construed to do justice.

14:28:56  11       In the event that Your Honor thinks that the

14:29:00  12  complaint is not specifically detailed, Plaintiffs would

14:29:03  13  request leave to replead.  We could do that very quickly and

14:29:06  14  provide additional detail should the Court think that's

14:29:11  15  necessary or appropriate.

14:29:13  16       But, Your Honor, my time is running short, so I will

14:29:21  17  note just quickly that Plaintiffs' substantive due process

14:29:24  18  claims of course are governed by the undue burden standard.

14:29:29  19  That standard is highly fact intensive.  Defendants have

14:29:33  20  pointed to other cases in which laws similar to some of the

14:29:38  21  laws challenged here were upheld based on insufficiency of the

14:29:43  22  factual record.  Defendants haven't pointed to a single case

14:29:47  23  where an abortion restriction was upheld as a matter of law.

14:29:49  24       In all of the cases that they cite concerning

14:29:52  25  physician-only laws, concerning waiting periods, and so on, the

14:29:56 1 court says that the plaintiffs failed to produce sufficient

14:30:00 2 evidence to demonstrate that these laws are unconstitutional,

14:30:05 3 but they didn't hold that it's impossible to produce that kind

14:30:10 4 of evidence.

14:30:10 5     In *Casey* the Supreme Court also noted that medical

14:30:15 6 science evolves and that, as a result of that, some of the

14:30:21 7 rules and some of the facts that are -- that were correct in

14:30:26 8 1992 may not continue to be correct going forward.  In *Casey*

14:30:30 9 the court specifically talked about the viability standard and

14:30:33 10 said, you know, the point of viability, the point at which a

14:30:37 11 state can lawfully prescribe abortion, is going to change over

14:30:41 12 time.

14:30:42 13     Well, the same is true about some of the other

14:30:44 14 regulations that, you know, the State has talked about.  The

14:30:48 15 state of medicine is very different in 2019 than it was in 1973

14:30:53 16 or 1992, and that's all part of the relevant factual record

14:30:57 17 that the Court needs to take into account in balancing the

14:31:01 18 benefits of law against its burdens.

14:31:03 19     Plaintiffs are entitled to proceed to trial and to

14:31:07 20 present evidence in support of their undue burden claims, and

14:31:10 21 Plaintiffs are confident that they'll be able to present

14:31:14 22 evidence sufficient to establish violations of the undue burden

14:31:16 23 standard.

14:31:22 24     With respect to the university chancellor,

14:31:26 25 Your Honor, first of all, the State didn't raise the sovereign

14:31:29  1   immunity issue until its reply brief.  Sovereign immunity is

14:31:34  2   waivable, and, therefore, the State waived it by not raising it

14:31:36  3   in its initial brief.

14:31:38  4           But to the extent this issue is relevant to

14:31:41  5   Plaintiffs' standing to bring claims against the university

14:31:44  6   chancellor, I will simply point out that the chancellor is the

14:31:47  7   chief executive officer of the university.  He is responsible

14:31:52  8   for the conduct of all of the other personnel at the

14:31:56  9   university, and he has the authority to order university

14:32:02  10  personnel to conform their conduct to the requirements of the

14:32:06  11  Constitution or any order of this Court.  So he is an

14:32:10  12  appropriate defendant.

14:32:12  13          Should the Court believe otherwise, then we would

14:32:15  14  request leave to replead and add to the case as defendants the

14:32:21  15  head of each and every one of the UT schools.  But we don't

14:32:26  16  think it's necessary to bring that many defendants into the

14:32:29  17  case.  We believe that the chancellor is the appropriate

14:32:32  18  defendant because he's the chief executive --

14:32:34  19          THE COURT:  Why is it appropriate to have that set of

14:32:37  20  allegations in this case that is effectively attacking statutes

14:32:46  21  if for the most part?  Why should that not be handled separate

14:32:50  22  and apart based on the facts of that particular allegation?

14:32:55  23          MS. TOTI:  Your Honor, the plaintiffs chose to

14:32:56  24  include those claims in this case for purposes of efficiency

14:33:01  25  because, you know, many of the issues are related and, you

14:33:05    1  know, it's the same plaintiffs who are affected.  So they

14:33:09    2  thought it would be most efficient to deal with all of those

14:33:14    3  issues at once.  Should the Court want to sever those claims

14:33:18    4  and deal with them separately, the plaintiffs are certainly

14:33:21    5  amenable to that, provided that it won't result in unreasonable

14:33:25    6  discovery obligations on them.

14:33:32    7            THE COURT:  Go ahead.

14:33:33    8            MS. TOTI:  If the Court has no further questions,

14:33:35    9  then I'll rest there.

14:33:36   10            THE COURT:  I have no further questions.  Thank you

14:33:38   11  for your argument.

14:33:40   12            MS. TOTI:  Thank you.

14:33:40   13            THE COURT:  Ms. Klusmann, you've got five minutes.

14:33:43   14  You gave Ms. Dippel five, and she gave you back five.  And so

14:33:47   15  everything's right.

14:33:49   16            MS. KLUSMANN:  Thank you, Your Honor.  I'd like to

14:33:54   17  start first with a few legal points.  Ms. Toti says that, well,

14:33:59   18  sure, *Hellerstedt* didn't change *Casey*, but it undid every

14:34:05   19  previous Fifth Circuit case.  That's absolutely untrue.  There

14:34:09   20  are two cases that use the rational basis standard in the Fifth

14:34:11   21  Circuit: the one dealing with admitting privileges, which is

14:34:13   22  not at issue here, and the one dealing with admitting

14:34:15   23  privileges and, again, the ambulatory surgical center law.

14:34:19   24  Every other Fifth Circuit case is still good law.  And our

14:34:22   25  motion to dismiss actually relies primarily on Supreme Court

14:34:26  1  case which is are unquestionably still good law.  So

14:34:29  2  *Hellerstedt*, again, does not open up any new legal avenues.

14:34:33  3       I'd like to talk a little bit, just because I think

14:34:36  4  it's a good example, about the facility licensing claim.  She

14:34:40  5  doesn't respond -- she did not respond to our allegations that

14:34:44  6  they are actually seeking to strike down sterilization and

14:34:47  7  infection control requirements, that you have running water or

14:34:52  8  sinks or functioning toilets.  She just says it's wrong to

14:34:55  9  license abortion facilities.

14:34:57  10      Well, *Roe* says you can license abortion facilities.

14:35:00  11  *Roe* says you can require health and safety measures at abortion

14:35:04  12  facilities.  That's black letter law.  It is in the original

14:35:09  13  case that established the right to abortion.  That's just not

14:35:14  14  going to be a legal argument that can move forward.  So their

14:35:17  15  only option is to challenge individually every single thing in

14:35:22  16  Chapter 139, such as toilets and infection control procedures.

14:35:28  17  They have no answer for that.  And, again, their pleadings are

14:35:31  18  completely devoid of -- or allegations that, you know,

14:35:36  19  requiring training for their employees somehow causes an undue

14:35:40  20  burden on a woman's right to have an abortion.

14:35:43  21      So, again, you cannot knock out the facility

14:35:47  22  licensing requirement without violating *Roe*.  So, therefore,

14:35:50  23  you do have to look at all of those individually, and they have

14:35:55  24  absolutely no answer for that.

14:35:57  25      And that just links back again to the standing

argument.  I think that the question that needs to be asked is:

Will enjoining these laws benefit women?  And if the answer,

common sense, is no, then this case should not move forward

because, number one, Plaintiffs should be denied third-party

standing.  If their claims are not going to benefit their

patients, then they have a conflict of interest, and they

should not be allowed to assert their patients' rights in

court.  Number two, if striking down these laws will not

benefit women, then they are not an undue burden, and they will

lose on the merits.

Ms. Toti also did not again claim that they are

bringing a cumulative effects claim.  So the idea that all of

these laws together somehow create an undue burden where they

might individually be constitutional, that should not be before

this Court.  And there aren't sufficient facts anyway to

explain why there is a burden.  Dr. Kumar is performing

abortions.  Whole Woman's Health Alliance has a clinic and is

operating.  There is no allegation that they or anyone else in

Texas has been thwarted in their attempt to open a clinic by

some combination of these laws.

So they have not pled it, it's not a thing that has

been legally recognized by the Supreme Court, and there's

just -- there are no facts to establish that they would be

successful in such a claim.

And then, yes, to Your Honor's question about whether

they have linked their laws to the facts in the case -- or their pleadings to laws in the case, there's nothing in there that explains why reporting requirements present a substantial obstacle to a woman seeking abortion.  There's nothing in there about why, let's see, the procedural requirements for informed consent create a substantial obstacle to abortion or why the venue requirements for judicial bypass create a substantial obstacle to abortion.

We should not have to go through all of this discovery.  We should not have to sit Dr. Kumar down and go through the entirety of chapter 139 and say:  Which one is too hard for you to do?  Which one is driving women from your clinic?  The commonsense answer is that none of them are.  We are regulating abortion facilities as medical facilities, as we are constitutionally permitted to do so.

So, again, I just think that is an example of how their claims are deficient, and their pleadings certainly do not state a plausible claim on their face.

As to the chancellor, the complaint said that he engaged in misconduct, but their response to our motion to dismiss made it clear he had not.  So when that was clear, we raised our sovereign immunity argument.  We raised it at the first moment that it became apparent that sovereign immunity was applicable.

And their argument that well, he's over all of the

14:38:50  1   university system, that would make him responsible for every

14:38:53  2   single act of misconduct by every employee.  And that's just

14:38:57  3   simply not the law.  He has to be in charge of the decision

14:39:00  4   that is unconstitutional, and there is nothing in here to say

14:39:03  5   that is the case.

14:39:04  6        Texas regulates the provision of abortion to ensure

14:39:08  7   that it is safe; that a woman's decision is fully informed; and

14:39:11  8   that minors seeking abortion have the counsel and maturity that

14:39:15  9   they need.  The Supreme Court has upheld these laws, and

14:39:20  10  Plaintiffs have given the Court no legal or factual grounds to

14:39:23  11  reach any other conclusion than the ones that Court has already

14:39:26  12  reached.  Their claims are meritless, and some of them border

14:39:30  13  on the frivolous.  The Court should grant Defendants' motions.

14:39:34  14       I think that is about my five minutes, unless you

14:39:37  15  have further questions, Your Honor.

14:39:38  16       THE COURT:  No.  You did well with it.

14:39:40  17       MS. KLUSMANN:  Thank you.

14:39:41  18       THE COURT:  I want to thank you all for good

14:39:43  19  arguments.  As I said, I'm not sure that the way this is

14:39:50  20  pleaded is as enlightening as the way it was argued today.  I

14:39:56  21  think the arguments have been helpful.  We are going to go

14:40:00  22  through and look at this and see if we think we can come up

14:40:05  23  with a ruling that will make sense based on the record.  If we

14:40:11  24  can, the case is submitted, and we'll come up with that ruling.

14:40:16  25  If we cannot, we may get back together and have a conference

14:40:20  1  about how to replead it or lay out the issues better in order

14:40:23  2  that it is extremely clear as to what we're doing.

14:40:27  3  　　　　But, Happy New Year to everyone.  Thank you for being

14:40:30  4  here.  And the matter is under submission, and the court's in

14:40:33  5  recess.

14:40:34  6  　　　(End of transcript)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  **UNITED STATES DISTRICT COURT      )**

2  **WESTERN DISTRICT OF TEXAS         )**

3      I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10      WITNESS MY OFFICIAL HAND this the 20th day of May 2019.

11

12                          /S/ Arlinda Rodriguez
                            Arlinda Rodriguez, Texas CSR 7753
13                          Expiration Date:  10/31/2021
                            Official Court Reporter
14                          United States District Court
                            Austin Division
15                          501 West 5th Street, Suite 4152
                            Austin, Texas 78701
16                          (512) 391-8791

17

18

19

20

21

22

23

24

25