**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| WHOLE WOMAN'S HEALTH ALLIANCE; *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| KEN PAXTON, Attorney General of Texas, in his official capacity; *et al.*, | ) ) ) ) |
| Defendants. | ) |

CIVIL ACTION

CASE NO. 1:18-CV-00500-LY

**PLAINTIFFS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO THE MOTION TO
DISMISS BY DEFENDANTS PAXTON, YOUNG, HELLERSTEDT, AND FRESHOUR**

## INTRODUCTION

Plaintiffs respectfully submit this supplemental brief to address the impact of the Supreme Court's recent decision in *June Medical Services, L.L.C. v. Russo*, 140 S. Ct. 2103 (2020), on the pending motion to dismiss filed by Defendants Paxton, Young, Hellerstedt, and Freshour, Defs.' Mot. to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 33) ("Defs.' Mot.").[1]  In *June Medical Services*, the Supreme Court held, for the second time in four years, that the Fifth Circuit erred in upholding an abortion restriction that violated the undue burden standard. 140 S. Ct. at 2112-13. Justice Breyer announced the judgment of the Court and delivered an opinion in which Justices Ginsburg, Sotomayor, and Kagan joined. *Id.* at 2112-33. Chief Justice Roberts filed a separate opinion concurring in the judgment. *Id.* at 2133-42. The remaining four Justices dissented, each filing a separate opinion. *Id.* at 2142-82. For the reasons set forth below, *June Medical Services* confirms that this Court should reject the State's arguments concerning third-party standing and Plaintiffs' substantive due process claim.

## ARGUMENT

**I.    *June Medical Services* Confirms that the State's Attack on Plaintiffs' Third-Party Standing is Meritless.**

In *June Medical Services*, the State argued for the first time in its cross-petition for certiorari that the plaintiff abortion providers lacked third-party standing to assert the rights of their patients. *June Med. Servs.*, 140 S. Ct. at 2117. In the district court, the State had conceded that the Fifth Circuit's precedents foreclosed a challenge to the plaintiffs' standing. *Id.* at 2118; *see*

---

[1] Defendants Faulkner and Escamilla also have motions to dismiss pending before the Court. Def. Larry R. Faulkner, Ph.D.'s Mot. to Dismiss (ECF No. 30); Def. Escamilla's Mot. to Dismiss Pursuant to FRCP 12(b)(1) (ECF No. 48). *June Medical Services* is not relevant to the issues raised in those motions.

Plaintiffs note that many of the original Defendants, sued in their official capacities, have been succeeded in office—some more than once—since they filed the motions to dismiss. Plaintiffs will seek to update the case caption after the Court issues its ruling.

1

*also id.* at 2166 (Alito, J., dissenting) (characterizing the State's concession as "an accurate statement of circuit precedent on the standing of abortion providers"). A majority of the Supreme Court held that the State waived its third-party standing argument, which is prudential in nature and does not implicate the Court's jurisdiction. *Id.* at 2117-20 (plurality); *id.* at 2139 n.4 (Roberts, C.J., concurring). In so doing, the Supreme Court left intact the Fifth Circuit's precedents holding that abortion providers have standing to challenge abortion restrictions on behalf of their abortion patients. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589 & n. 9 (5th Cir. 2014) (rejecting the State's contention that a conflict of interest precluded physicians from asserting the rights of their abortion patients); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 334 (5th Cir. Unit B 1981) (holding that an abortion clinic had standing to challenge abortion restrictions on behalf of its patients).

The Supreme Court went on to reaffirm its own "long line of well-established precedents" holding that abortion providers satisfy the requirements of third-party standing with respect to their patients' abortion rights. *June Med. Servs.*, 140 S. Ct. at 2118-20 (plurality) ("We have long permitted abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations." (collecting cases)); *accord id.* at 2139 n.4 (Roberts, C.J., concurring) ("For the reasons the plurality explains, I agree that the abortion providers in this case have standing to assert the constitutional rights of their patients." (citation omitted)). Ultimately, the Supreme Court concluded that "the State's strategic waiver and a long line of well-established precedents foreclose its belated challenge to the plaintiffs' standing." *Id.* at 2120 (plurality); *accord id.* at 2139 n.4 (Roberts, C.J., concurring); *see also Memphis Ctr. for Reprod. Health v. Slatery*, 2020 WL 4274198, at *13 (M.D. Tenn. July 24, 2020) (recognizing that, in *June Medical Services*, "five of nine justices agreed that abortion providers have standing to assert the

constitutional rights of their patients"); *SisterSong Women of Color Reprod. Justice Collective v. Kemp*, __ F. Supp. 3d __, 2020 WL 3958227, at *17 (N.D. Ga. July 13, 2020) (explaining that *June Medical Services* "recently reaffirmed this type of third-party standing in abortion cases").

*June Medical Services* thus reinforces that Dr. Kumar, who provides abortion care in Texas, Compl. (ECF No. 1) ¶ 15, and Whole Woman's Health Alliance, which operates an abortion clinic in the State, *id.* ¶ 9, have standing to invoke the rights of their current and future abortion patients. Notably, the Supreme Court rejected the argument raised by Defendants here—that plaintiffs cannot invoke third-party standing when "challeng[ing] a law ostensibly enacted to protect the women whose rights they are asserting." *June Med. Servs.*, 140 S. Ct. at 2119 (plurality); *accord id.* at 2139 n.4 (Roberts, C.J., concurring). It explained that a long line of cases recognize "provider standing to challenge regulations said to protect women." *Id.* at 2120 (plurality); *accord id.* at 2139 n.4 (Roberts, C.J., concurring).

Further, nothing in *June Medical Services* alters the well-established one-plaintiff rule, which makes it unnecessary for this Court to consider the standing of the remaining plaintiffs in this case. *See* Pls.' Resp. in Opp. to the Mot. to Dismiss by Defs.' Paxton, Young, Hellerstedt & Freshour (ECF No. 41) ("Pls.' Resp.") at 8-10.

## II. *June Medical Services* Confirms that Plaintiffs Have Stated a Plausible Substantive Due Process Claim Against the Challenged Laws.

### A. *Whole Woman's Health* Remains Controlling Precedent.

Plaintiffs' substantive due process claim is governed by the undue burden standard. *See id.* at 17. First announced in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 877-78 (1992), this standard was clarified in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2300, 2309-10 (2020). There, the Supreme Court held that "[t]he rule announced in *Casey* . . . requires that courts consider the burdens a law imposes on abortion access together with

3

the benefits those laws confer," *id.* at 2309, such that a law is unconstitutional if it fails to confer benefits "sufficient to justify the burdens" it imposes on abortion access, *id.* at 2300.

In *June Medical Services*, all Justices in the majority agreed that *stare decisis* requires adherence to *Whole Woman's Health*. *June Med. Servs.*, 140 S. Ct. at 2112-13 (plurality); *id.* at 2133-34 (Roberts, J., concurring). The plurality and concurrence disagreed, however, on how certain aspects of that decision should be applied. Both agreed that abortion laws violate the undue burden standard if (1) they are not reasonably related to a legitimate governmental interest, or (2) they impose an impermissible level of burden on individuals seeking abortion care. *See id.* at 2120 (plurality); *id.* at 2138 (Roberts, J., concurring). But they disagreed on how to determine whether the burden imposed by a law is impermissible. The plurality held that the second prong of the test *requires* weighing the law's burdens against its benefits. *Id.* at 2120 (plurality). It therefore assessed the Louisiana law's burdens relative to its benefits, concluding that the burdens were undue. *Id.* at 2120-21. The concurrence contended that the second prong of the test *bars* weighing a law's benefits against its burdens, confining consideration of benefits to the first prong. *Id.* at 2138-39 (Roberts, C.J., concurring). It therefore assessed the magnitude of the law's burdens independently of its benefits, concluding that the burdens were substantial. *Id.* at 2139-42 (Roberts, C.J., concurring).

Typically, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1997) (citation omitted). This principle, however, "is only workable where there is some 'common denominator upon which all of the justices of the majority can agree.'" *United States v. Duron-Caldera*, 737 F.3d 998, 994 n.4 (5th Cir. 2013) (citing *United*

*States v. Eckford*, 910 F.2d 216, 219 n.8 (5th Cir. 1990)).  Where none of the opinions concurring in the judgment "can be viewed as a logical subset of the other[s]," the case "does not provide a controlling rule" that is binding in future cases.[2]  *Duron-Caldera*, 737 F.3d at 994 n.4.  Thus, in *Duron-Caldera*, the Fifth Circuit held that the Supreme Court's decision in *Williams v. Illinois*, 567 U.S. 50 (2012), failed to produce a binding rule because there was no common denominator between a four-Justice plurality and a separate opinion concurring in the judgment.  *Id*.  ("Neither of these opinions can be viewed as a logical subset of the other.  Rather, Justice Thomas [concurring in the judgment] expressly disavows what he views as 'the plurality's flawed analysis,' including the plurality's 'new primary purpose test.'" (citation omitted)).

So too in *June Medical Services*.  Because the plurality and concurrence lack a common denominator with respect to the role of a law's benefits in the undue burden analysis, there is no rule of decision on which at least five Justices agree, and neither opinion is controlling on this issue.[3]  *See Duron-Caldera*, 737 F.3d at 994 n.4.  Instead, *Whole Woman's Health* remains controlling and must speak for itself.  *See* 136 S. Ct. at 2300, 2309-10.

---

[2] This is because binding precedent can only be created by a majority of the Supreme Court.  *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987) ("As the plurality . . . did not represent the views of a majority of the Court, we are not bound by its reasoning." (footnote omitted)).  If there is no least common denominator on which at least five Justices agree, then a decision does not produce a controlling rule that is binding in future cases.  *See Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 619 (7th Cir. 2014) ("[W]hen it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court." (quoting *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003)).

[3] It is of no consequence that the four dissenting Justices rejected the rule applied by the plurality.  Only opinions concurring in the judgment may supply a binding rule of decision.  *See Marks*, 430 U.S. at 193 (explaining that the holding of the Court "may be viewed as that position taken by those Members *who concurred in the judgments* on the narrowest grounds" (emphasis added) (citation omitted)); *Duron-Caldera*, 737 F.3d at 994 n.4 (explaining that, to divine a binding rule, there must be a "common denominator upon which all of the justices *of the majority* can agree" (emphasis added)).

5

Analyzing *June Medical Services*, a district court in the District of Maryland provided an apt summary: "To the extent that there is a 'common denominator,' it is that the five Justices agreed that a 'substantial obstacle' based solely on consideration of burdens is *sufficient* to satisfy the undue burden standard, not that it is *necessary*." *Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*, __ F. Supp. 3d __, 2020 WL 3960625, at *16 (D. Md. July 13, 2020), *appeal filed* (No. 20-1824 July 29, 2020). "Accordingly, *June Medical Services* is appropriately considered to have been decided without the need to apply or reaffirm the balancing test of *Whole Woman's Health*, not that *Whole Woman's Health* and its balancing test have been overruled." *Id.* Because *Whole Woman's Health* "remains the most recent majority opinion delineating the full parameters of the undue burden test, the Court finds that its balancing test remains binding on this Court." *Id.* at *17.

Plaintiffs' prior briefing establishes that Plaintiffs have stated a plausible substantive due process claim under the balancing test articulated and applied in *Whole Woman's Health*. Pls.' Resp. at 17-20.

### B. *June Medical Services* Emphasizes the Fact-Dependent Nature of the Undue Burden Standard.

*June Medical Services* confirms that the undue burden standard is highly fact dependent. In assessing the constitutionality of a Louisiana statute identical to one of the Texas laws struck down in *Whole Woman's Health*, both the plurality and concurrence undertook a detailed analysis of the evidentiary record. *June Med. Servs.*, 140 S. Ct. at 2120-32 (plurality); *id.* at 2139-41 (Roberts, C.J., concurring). The plurality concluded that the statute is unconstitutional because the evidentiary record concerning its benefits and burdens was comparable to that in *Whole Woman's Health*, not merely because the statute itself was comparable to the law at issue in *Whole Woman's Health*. *Id.* at 2113 ("We have examined the extensive record carefully and conclude

6

that it supports the District Court's findings of fact.  Those findings mirror those made in *Whole Woman's Health* in every relevant respect and require the same result.  We consequently hold that the Louisiana statute is unconstitutional.").  The concurrence likewise looked to the evidentiary record, rather than the face of the statute, in concluding that the statute is unconstitutional.  *Id.* at 2142 (Roberts, C.J., concurring) ("The Louisiana law burdens women seeking previability abortions to the same extent as the Texas law, according to factual findings that are not clearly erroneous.  For that reason, I concur in the judgment of the Court that the Louisiana law is unconstitutional."); *see also id.* at 2141 n.6 (Roberts, C.J., concurring) (acknowledging that the validity of an abortion restriction "depend[s] on numerous factors that may differ from State to State" and "[w]hen it comes to the factual record, litigants normally start the case with a clean slate." (citations omitted)).

Accordingly, Defendants' contention that Plaintiffs' substantive due process challenge to certain Texas laws is foreclosed by decades-old cases concerning laws in other jurisdictions is plainly incorrect.  *See* Defs.' Mot. at 36-67.  Plaintiffs have alleged that the challenged Texas laws unduly burden individuals seeking abortion access in myriad ways.  *See, e.g.*, Compl. at ¶¶ 164-96.  They are entitled to marshal evidence to prove those allegations, and the Court must ultimately judge Plaintiffs' claim based on the evidentiary record in this case, not the records in prior cases.

Further, *June Medical Services* belies Defendants' contention that Plaintiffs must allege that a law has "caused a clinic to close or . . . prevented a clinic from opening" to plead a valid substantive due process claim.  Defs.' Mot. at 42.  Both the plurality and the concurrence considered a wide range of burdens in applying the undue burden standard, including longer wait times; increased crowding at abortion clinics; elevated health risks; increased travel distances; and loss of treatment options.  *See June Med. Servs.*, 140 S. Ct. at 2129-30 (plurality); *id.* at 2140

(Roberts, C.J., concurring).  Although these burdens may result from clinic closures, they may also result from other impacts of a challenged law.  In addition, the Supreme Court considered the disproportionate effects of the Louisiana law on vulnerable groups.  *Id.* at 2130 (plurality) ("[T]he burdens . . . would fall disproportionately on poor women, who are least able to absorb them."); *id.* at 2140 (Roberts, C.J., concurring) (taking into account burdens on women who "already have difficulty affording or arranging for transportation and childcare").

Finally, *June Medical Services* makes clear, contrary to the State's arguments, that a court applying the undue burden standard must engage in a contextualized analysis that takes into account the impact of other laws and policies in force.  *Id.* at 2130 (plurality) ("The impact . . . would be magnified by Louisiana's requirement that every woman undergo an ultrasound and receive mandatory counseling at least 24 hours before an abortion."); *id.* at 2140-41 (Roberts, C.J., concurring) (discussing the impact of hospital admitting-privileges policies); *accord* Pls.' Resp. at 18 n.8.

### C. Even Under a Test That Evaluates Burdens Independently of Benefits, Plaintiffs Have Stated a Plausible Substantive Due Process Claim.

Plaintiffs have alleged sufficient facts to state a facially plausible substantive due process claim, even if the Court were to apply a test that considers burdens independently of benefits.  *See Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018).

In particular, Plaintiffs have alleged that each challenged law poses a substantial obstacle to abortion access by imposing numerous burdens on abortion patients.  *See, e.g.*, Compl. at ¶¶ 164-96.  These include the kinds of burdens deemed constitutionally impermissible by the concurring opinion in *June Medical Services*, such as reduction in the number and geographic distribution of abortion providers, Compl. ¶ 166; longer wait times for appointments, *id.* ¶¶ 167-68, 173; other delays in abortion access that push patients later into pregnancy, *id.* ¶¶ 167-68, 174;

elevated health risks from pregnancy and abortion, *id.* ¶175; and greater travel distances for patients seeking abortion care, *id.* ¶¶ 171-72. Likewise, Plaintiffs have alleged that the challenged laws disproportionately impact vulnerable groups by compounding the effects of racism, poverty, and other forms of oppression. *Id.* ¶¶ 182-85. As in *June Medical Services*, the substantial, intersecting burdens alleged in this case are a far cry from the de minimis costs and potential delays that *Casey* rejected as insubstantial. *See June Med. Servs.*, 140 S. Ct. at 2136-37 (Roberts, C.J., concurring) (discussing the abortion restrictions at issue in *Casey*). Accordingly, Plaintiffs' substantive due process claim against the challenged laws is legally sufficient even if the Court evaluates it based solely on the alleged burdens.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' prior briefing, the Court should deny the motion to dismiss by Defendants Paxton, Young, Hellerstedt, and Freshour.

Dated: August 6, 2020

Respectfully submitted,

/S/ *Stephanie Toti*

| | |
|---|---|
| Stephanie Toti | Patrick J. O'Connell |
| 646-490-1083 | LAW OFFICES OF PATRICK J. O'CONNELL, PLLC |
| stoti@lawyeringproject.org | 5926 Balcones Dr., No. 220 |
| Amanda Allen* | Austin, TX 78731 |
| 646-490-1254 | 512-852-5918 |
| aallen@lawyeringproject.org | pat@pjofca.com |
| Juanluis Rodriguez* | |
| 646-490-1080 | Dipti Singh* |
| prodriguez@lawyeringproject.org | LAWYERING PROJECT |
| LAWYERING PROJECT | 3371 Glendale Blvd., No. 320 |
| 25 Broadway, Fl. 9 | Los Angeles, CA 90039-1825 |
| New York, NY 10004 | 646-480-8973 |
| | dsingh@lawyeringproject.org |
| Rupali Sharma* | |
| LAWYERING PROJECT | |
| 197 Pine St., No. 23 | |
| Portland, ME 04102 | |
| 908-930-6645 | |
| rsharma@lawyeringproject.org | |

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

10

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 6, 2020, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

                                                             */S/ Stephanie Toti*
                                                             Stephanie Toti